UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KURT WILLIAM HARTMAN,

    Plaintiff,

v.                                          Case No:   6:14-cv-1440-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff, Kurt William Hartman, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for a period of disability and DIB in June 2011, alleging disability beginning in August 2010. (Tr. 419-20). Plaintiff's application was denied initially on November 4, 2011, and upon reconsideration on January 6, 2012. (Tr. 212, 219). At Plaintiff's request, three administrative hearings were held before administrative law judges. The first hearing occurred on September 19, 2012, before Administrative Law Judge James Andres. (Tr. 164-77). The second hearing occurred on June 27, 2013, before Administrative Law Judge D.K. Dugan. (Tr. 103-63). The third hearing was held on October 8, 2013, before Administrative Law Judge Robert Spurlin ("ALJ Spurlin" or "the ALJ"). (Tr. 78-102). On November 25, 2013, ALJ Spurlin issued a decision finding that Plaintiff was not under a disability from August 22, 2010, through the date of his decision. (Tr. 12-34). Plaintiff appealed ALJ Spurlin's decision and the Appeals Council denied Plaintiff's request for review on July 7, 2015. (Tr. 1). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on September 9, 2014. The parties having filed memorandum in support of their positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 22, 2010, Plaintiff's alleged onset date. (Tr. 14). At step

two, the ALJ found that Plaintiff had the following severe impairments: cervical spine degenerative disc disease; lumbar spine degenerative disc disease; mild degenerative joint disease of the right knee; diabetes mellitus; hypertension; history of bilateral sensory neural hearing loss with no difficulties with perception of spoken speech at normal spoken speech volume; left cubital tunnel syndrome; and obesity. (Tr. 14-15). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) as follows: the claimant can lift and/or carry, and push and/or pull, up to 20 pounds occasionally and 10 pounds frequently. The claimant can sit for six hours total in an eight-hour workday, and can stand and/or walk for two hours total in an eight-hour workday. The claimant can occasionally climb ramps or stairs, climb ladders, ropes, or scaffolds, stoop, kneel, balance, crouch, and crawl. The claimant can occasionally perform fine manipulation, gross manipulation, and feeling with his left non-dominant upper extremity. Additionally, the claimant can occasionally reach waist to chest with his left non-dominant upper extremity. The claimant can never be exposed to unprotected heights, moving mechanical parts, and vibrations. The claimant has no communicative, visual, or mental limitations.

(Tr. 20). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as an animal treatment investigator, and as a Customs patrol officer as a member of the U.S. Coast Guard. (Tr. 32). At step five, the ALJ applied the Grids and found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 32). The ALJ concluded that Plaintiff has not been under a disability from August 22, 2010, through the date of his decision. (Tr. 33).

**II.     Analysis**

Plaintiff argues that the ALJ erred by failing to give proper weight to all medical opinions of record and that the ALJ's RFC finding was not supported by substantial evidence as it conflicts with medical opinions in the record. (Doc. 22 p. 25). Specifically, the ALJ contends that the ALJ erred by relying on the opinion of non-examining medical expert psychologist Dr. Carver, as Dr. Carver did not review all of Plaintiff's medical records concerning his mental impairments and because Dr. Carver's opinion was contradictory. (Doc. 22 p. 27). In addition, Plaintiff contends that despite the ALJ's decision to accord "great weight" to the opinion of psychologist Dr. Raftery, the ALJ failed to include in his RFC finding those aspects of Dr. Raftery's opinion showing Plaintiff had mental limitations. (Doc. 22 p. 27-28). Plaintiff argues that the ALJ failed to fully consider Plaintiff's testimony in making his RFC determination, especially Plaintiff's testimony regarding the reasons he discontinued mental health treatment and his inability to receive treatment for PTSD. (Doc. 22 p. 28). Finally, Plaintiff contends that the ALJ erred by failing to consider the physical limitations imposed by treating medical source Nurse Marino. (Doc. 22 p. 32).

In response, Defendant argues that substantial evidence supports the ALJ's evaluation of the medical opinions. (Doc. 26 p. 4). Defendant contends that substantial evidence supports the ALJ's decision to accord Dr. Carver's opinion great weight because it was consistent with the medical evidence of record and Plaintiff's activities of daily living. (Doc. 26 p. 4-10). Defendant contends that Dr. Raftery's opinion does not contradict the ALJ's determination that Plaintiff's impairments would cause only mild difficulties in activities of daily living, social functioning, and concentration, persistence, and pace. (Doc. 26 p. 8). Finally, Defendant argues that substantial evidence supports the ALJ's decision not to accept the statements from Nurse Marino. (Doc. 26 p. 11).

**A. Whether the ALJ erred in his treatment of the opinions of Dr. Carver and Dr. Raftery**

At step two, the ALJ specifically found that Plaintiff's PTSD and depression were not severe. In support of this finding, the ALJ explained that he accorded "great weight" to the opinions of Dr. Carver and Dr. Raftery. Thus, while Plaintiff's Memorandum of Law frames its arguments as attacking the ALJ's RFC finding, Plaintiff's arguments concerning the ALJ's treatment of the opinions from Dr. Carver and Dr. Raftery actually concern the ALJ's findings at step two of the sequential evaluation process.

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). An ALJ's error at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (unpublished); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).

Mental impairments are evaluated based on how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 1520a(c)(3). If the degree

of limitation in the first three functional areas is rated as "none" or "mild," and "none" in the fourth area, the Commissioner generally concludes the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). The ALJ must incorporate the results of this analysis into his findings and conclusions. *Moore*, 405 F.3d at 1213-14.

The Court begins with the ALJ's analysis of Dr. Carver's opinion. In his decision, the ALJ explained his reasoning in according "great weight" to Dr. Carver's decision as follows:

> Greatly bolstering the finding herein his mental impairments are not severe is the October 8, 2013, testimony of impartial medical expert, Joseph Carver, Ph.D., who specializes in psychology. Dr. Carver reviewed the evidence of record and testified at the hearing at the undersigned's request. Dr. Carver reported the record shows the claimant was treated for PTSD and his condition improved with medication. He noted the claimant had no significant treatment for years, no ongoing psychiatric treatment, and had not received psychotropic medications. Dr. Carver opined the claimant's mental conditions were not disabling.
>
> The undersigned finds Dr. Carver's opinion is entitled to great weight because it is based on a thorough review of the evidence, is supported by objective clinical findings and treating progress notes in the record, and is consistent with the substantial evidence of record. For example, Dr. Carver's opinion is supported by the evidence of the claimant's normal mental status examinations performed by Dr. Gayle as discussed above. Additionally, his opinion is consistent with the assessment of Veterans Administration psychologist, Dr. Raftery, discussed below. For example, Dr. Raftery reported mental status examination revealed the claimant **did not have an impairment of either short-term or long-term memory, did not have difficulty understanding complex commands**, and did not have an impairment in judgment, abstract thinking, thought process, communication, or speech. (emphasis supplied) (Exhibit 24F/pp.65-76). Dr. Carver's opinion is congruous with the claimant's self-reports he could manage his funds independently, understand verbal and written instructions, use a computer, and as recently **as September 26, 2013, that he did not have memory difficulty or difficulty concentrating** (emphasis supplied) (Exhibits 17F; 20F; & 41F). 20 CFR 404.1527 and Social Security Ruling 96-6p.

(Tr. 16).

Medical experts may opine as to the nature and severity of a claimant's impairments, and their opinions are entitled to great weight when supported by substantial evidence. *See* 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p. Here, the Court finds that Dr. Carver's opinion was supported by substantial evidence, and that the ALJ did not err by according it "great weight." For example, the findings from Dr. Timothy L. Reid, psychiatrist, who found in December 2011 that although Plaintiff was depressed and had an anxious mood, he was fully oriented and had normal speech, no perceptual disturbances, no thought disorder, good insight, good judgment, and intact memory. (Tr. 1579). Likewise, Dr. Richard Gayle, a neurologist, examined Plaintiff in August 2012 and found Plaintiff had appropriate mood and affect, good articulation, normal speech and language, appropriate judgment and insight, good recent and remote memory, intact fund of knowledge, and normal attention span and concentration. (Tr. 1530). Similarly, Dr. Homi Cooper, a consultative physician, examined Plaintiff in November 2012 and observed that Plaintiff's mental status was generally intact and that Plaintiff had normal speech, good control of language, no anxiety or depression, and logical, sequential, and goal-directed thought processes. (Tr. 1658). Dr. Cooper opined that Plaintiff would have no difficulty with work-related mental activities involving the understanding and memory, sustained concentration and persistence, social interaction, and adaption. (Tr. 1659).

In addition, as the ALJ noted, Dr. Carver's opinion is supported by Plaintiff's self-reports of his ability to manage his funds independently, understand verbal and written instructions, and, as recently as September 26, 2013, that he did not have memory difficulty or difficulty concentrating. (Tr. 2335). In addition Plaintiff's activities of daily living support the ALJ's decision. *See Cuthbert v. Astrue*, 303 F.App'x 697, 699 (11th Cir. 2008). Plaintiff can take care

of his personal hygiene, prepare meals, do laundry, clean his house, shop for groceries, read, and drive. (Tr. 19, 1655).

Further, Plaintiff's denials of depression and lack of treatment support the ALJ's determination to give "great weight" to Dr. Carver's opinion. *See Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) ("A claimant's failure to seek medical treatment is . . . relevant in assessing credibility"). Plaintiff denied experiencing depression in June 2013 (Tr. 2282), repeatedly declined psychotropic medication or participation in group therapy (Tr. 1575), and refused to attend a mental health consultative examination. (Tr. 194). While Plaintiff contends that he had legitimate reasons for not seeking mental health treatment that the ALJ ignored, the ALJ specifically acknowledged Plaintiff's aversion to attending group therapy. (Tr. 25).

Plaintiff argues that Dr. Carver's opinion is undermined by the fact that Dr. Carver had not reviewed Plaintiff's most recent mental health records from Scott Fairchild, Psy.D., before testifying at the third administrative hearing. The record shows that Plaintiff visited Dr. Fairchild on October 1, 2013, for a Psychiatric diagnostic evaluation. (Tr. 2350). Dr. Fairchild diagnosed Plaintiff with PTSD and "Major Depressive Disorder, Recurrent, Severe with psychotic features, chronic." (Tr. 2350). Plaintiff returned to Dr. Fairchild on October 21, 2013, for psychotherapy. (Tr. 2349). Dr. Fairchild assessed "significant PTSD from multiple traumas" and prescribed Zoloft, Effexor, and Celexa. (Tr. 2349). Dr. Fairchild reiterated his diagnosis that Plaintiff had PTSD and "Major Depressive Disorder, Recurrent, Severe with psychotic features, chronic." (Tr. 2349).

The Court is not persuaded that the fact that Dr. Carver did not review the two records from Dr. Fairchild necessitates remand. While Dr. Fairchild diagnosed Plaintiff with PTSD and Major Depressive Disorder, it is the established law that diagnosis of an impairment says nothing about

how the impairment actually affects a claimant's ability to work. *Moore*, 405 F. 3d at 1213 n. 6. Further, the ALJ cited to Dr. Fairchild's treatment records and considered them in determining that Plaintiff's PTSD and depression were not severe.

Further, the Court does not find remand appropriate due to the ALJ's treatment of Dr. Raftery's opinion. In his opinion, the ALJ analyzed the opinion of Dr. Raftery as follows:

> Additionally, detracting from the claimant's claim his mental impairments are severe is the July 12, 2012, comprehensive mental evaluation performed by Roger Raftery, Ph.D. Significantly, Dr. Raftery concluded the claimant had a Global Assessment of Functioning (GAF) score of 60, which, although in the moderate range, is only one point away from the GAF range of 61 to 70, which indicates an individual has only mild symptoms or mild limitations in social occupational, or school functioning. DSM-IV-TR on page 32. Additionally supporting the finding herein the claimant's mental impairments are not severe, Dr. Raftery indicated the claimant **did not have an impairment of either short-term or long-term memory, did not have difficulty understanding complex commands**, and did not have an impairment in judgment, abstract thinking, thought process, communication, or speech. Notably, Dr. Raftery assessed the claimant would have only an **"occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily with routine behavior, self-care, and conversation normal)."** (emphasis supplied) (Exhibit 24F/pp. 65-76."

(Tr. 18). The ALJ explained that he gave "great weight" to this opinion because as it was supported by medical evidence and consistent with the record as a whole.

Plaintiff argues that the ALJ erred by giving great weight to Dr. Raftery's opinion, but failing to adopt all of Dr. Raftery's limitation findings. Plaintiff notes that the ALJ failed to mention other findings in Dr. Raftery's opinion that tend to support the finding that Plaintiff's PTSD and depression are severe impairments, such as his finding that Plaintiff has "markedly diminished interest or participation in significant activities," "difficulty failing or staying asleep," "difficulty concentrating," "depressed mood," "chronic sleep impairment," "mild memory loss,

- 11 -

such as forgetting names, directions or recent events," and "clinically significant distress or impairment in social, occupational, or other important areas of functioning." (Tr. 1755-56).

As noted above, an ALJ's error at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (unpublished); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Here, while the ALJ did not explicitly consider every aspect of Dr. Raftery's opinion in according the opinion "great weight" any error would be harmless. The ALJ thoroughly considered Plaintiff's alleged mental impairments in a single-spaced analysis spanning five pages of the decision, evincing that the ALJ considered Plaintiff's condition as a whole in determining Plaintiff's ability to work. Thus, while the ALJ perhaps have addressed Dr. Raftery's opinion in greater detail, in light of the ALJ's thorough discussion of Plaintiff's alleged mental impairment at step two, any error was harmless. Substantial evidence supports the ALJ's step two finding that Plaintiff's PTSD and depression are not severe and, therefore, the Court will not disturb the ALJ's findings on appeal.

### B. Whether the ALJ erred by failing to state the weight he accorded the opinion of Nurse Marino and orthopedist from the Deuk Spine Institute.

Plaintiff argues that the ALJ failed to consider the physical limitations imposed by Plaintiff's treating nurse, Nurse Marino, and by an orthopedist at the Deuk Spine institute. (Doc. 22 p. 32). Plaintiff contends that the ALJ failed to explain why his RFC finding contradicts these opinions. (Doc. 22 p. 33). Defendant responds that although the ALJ did not specifically discuss Nurse Marino's opinion, the ALJ sufficiently discussed the evidence such that his reasoning can be followed, and, therefore, remand is not proper. (Doc. 26 p. 11).

The record reflects that Nurse Marino reviewed Plaintiff's medical file and prepared a Compensation and Pension Examination note on December 1, 2010. (Tr. 1358-84). Nurse Marino opined that:

> [Plaintiff] is able to do chores but he will be in a great deal of pain afterwards. The increased activity will cause flare ups. Sitting for any length of time will [also] aggravate the knee . . . The veteran is not able to sit, stand or walk for any length of time due to knees, neck and back. He will need to have a job that is not physical and that will allow for frequent breaks. He will not be able to run. [He will have] difficulty with climbing stairs and will require an elevator.

(Tr. 1364). Further, Nurse Marino opined that Plaintiff will need to lie down with the headaches and that increased neck movement and lifting will cause the neck pain that will lead to headaches. (Tr. 1376-77). Nurse Marino diagnosed nerve damage to include spasms and aching pain at the base of head, neck, shoulder, left arm, left and fingers secondary to herniated disc at C4-5 and C5-6. (T. 32). Nurse Marino limited Plaintiff to

> Sedentary work with limitations if required to look down for any length of time. Computer work will increase his symptoms. [He has] difficulty with turning his head from side to side . . .The veteran is not able to sit, stand or walk for any length of time due to knees, neck, and back. He will need to have a job that is not physical and will allow for frequent breaks. He will not be able to run. [He has] difficulty with climbing stairs and will require an elevator.

(Tr. 1381-1382). The record also reflects that Plaintiff was instructed on July 1, 2013, by the orthopedist at the Deuk Spine Institute to avoid lifting greater than 10 pounds. (Tr. 2267).

"While nurse practitioners are not 'acceptable medical sources' for establishing an impairment, 20 C.F.R. §§ 404.1513(a), 416.913(a), they are nonetheless considered an 'other' medical source whose testimony may be used 'to show the severity of ... impairment(s) and how it affects [the] ability to work.' 20 C.F.R. § 404.1513(d)(1)." *Colon v. Colvin*, 2013 WL 4890312, at *2 (M.D. Fla. Sept. 11, 2013). Opinions from "other sources" are not entitled to any particular

deference. *Adams ex rel. A.M.P. v. Astrue*, 2012 WL 2923918, at *5 (N.D. Ala. July 16, 2012). An ALJ should generally explain the weight given to opinions from "other sources," or "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

In this case, remand is inappropriate because the ALJ's discussion of the evidence is such that his reasoning can be followed. The ALJ's decision is twenty-three single spaced pages long and thoroughly cites to Plaintiff's medical record which contains 2350 pages. Notably, in his opinion, the ALJ noted that Dr. Robert Sklaroff, an internist, reviewed the available evidence in June 2013 (Tr. 131-51) and opined Plaintiff could walk up to two hours. (Tr. 23-24, 148). Dr. John Griscom, an internist, reviewed the evidence in October 2013 (Tr. 86-95) and opined Plaintiff could perform sedentary work. (Tr. 25, 95). These opinions support the ALJ's decision not to accept Ms. Marino's opinions.

The ALJ also discussed the objective medical evidence, which did not show disabling abnormalities. *See Crawford*, 363 F.3d at 1159 (affirming determination that objective medical evidence showing minimal degenerative disc disease and no canal stenosis or nerve root impingement did not establish disability). MRIs of Plaintiff's cervical spine in July 2013 showed minimal or mild bulging and stenosis, with no evidence for underlying cord compression. (Tr. 25-26, 2285-86). An MRI of Plaintiff's left shoulder that month showed only mild and moderate findings for degenerative changes and tendinosis. (Tr. 26, 2287-88). X-rays of Plaintiff's right knee in December 2010 showed only mild degenerative joint disease (Tr. 1415), while x-rays of Plaintiff's left knee in November 2012 showed no arthritis or other abnormalities. (Tr. 26, 1659).

The ALJ's discussion of this evidence shows the ALJ's reasoning, and the ALJ was not required to accept Ms. Marino's statements.

As to the opinion evidence from July 2013, while it does state that Plaintiff should avoid lifting more than 10 pounds (Tr. 2267), Plaintiff testified that he could lift 20 pounds without any pain or difficulty, a fact the ALJ noted in his opinion. (Tr. 21, 172). Where, as here, a physician's opinion is contradicted by a claimant's testimony, the ALJ need not give that opinion considerable weight. *See Magill v. Comm'r of Soc. Sec.*, 147 F. App'x 92, 94 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)).

### III.  Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 18, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties